## J. B. RATLIFF ET AL. v. D. C. BURLESON.

### No. 713.

1. **Surveys—Course and Distance.**—In the absence of any artificial or natural objects called for in a survey, course and distance control the lines.

2. **Calls in Survey—Course and Distance.**—Even if in making a junior survey the surveyor had in fact run over the distance called for and to a survey supposed to be adjoining such junior survey, yet in absence of any call for objects susceptible of identification, or for any point in the line of the supposed adjacent survey, the course and distance called for will control.

3. **Agreements as to Boundaries Do Not Affect Public Domain.**—Agreements as to the location of a division line between owners of surveys considered as adjacent can not in any way affect the public domain.

4. **Calls in Field Notes.**—A survey must be ascertained by the calls contained in the field notes; and the line of another survey not called for will not control a call for course and distance, although the surveyor intended to go to such line.

APPEAL from Hays. Tried below before Hon. H. TEICHMUELLER.

*S. B. McBride* and *D. W. Doom,* for appellants.—There is no vacant land between the William Porter and the George Herder surveys subject to plaintiff's location, and the findings of fact, conclusions of law, and judgment of the court should have been for the defendants.

It was by all parties admitted and agreed in open court that the only controversy in this case was whether there was a vacancy, which should be public domain, between the William Porter and George Herder surveys, subject to the location of the said plaintiff, D. C. Burleson, and that if there was such vacancy, constituting part of the public domain, that the said D. C. Burleson was entitled to recover the amount of his location, and that if there was no such vacancy, the defendants Ratliff and Haigler were entitled to judgment. Brown v. Bedinger, 72 Texas, 247; Mayfield v. Williams, 73 Texas, 509; Moore v. Reiley, 68 Texas, 668; Jones v. Burgett, 46 Texas, 285; Lilley v. Blum, 70 Texas, 704; Duff v. Moore, 68 Texas, 270; Voight v. Mackle, 71

Texas, 78; Tudor v. Hodges, 71 Texas, 392; Ins. Assn. v. Miller, 2 Ct. App. C. C., sec. 335.

*Hutcheson & Franklin*, for appellee, cited: Anderson v. Stamps, 19 Texas, 460; Williams v. Winslow, 84 Texas, 371.

On motion for rehearing, counsel for appellants cited: Voight v. Mackle, 71 Texas, 78; Tudor v. Hodges, 71 Texas, 392; Brown v. Perez, 79 Texas, 157; Moore v. Morrison, 79 Texas, 240; Ins. Co. v. Miller, 2 Ct. App. C. C., sec. 335.

*Denman & Franklin* resisted the motion.

FISHER, CHIEF JUSTICE.—This suit was commenced by appellee, D. C. Burleson, as plaintiff, against J. B. Ratliff, E. P. Haigler, and T. N. Franks, as defendants, in the District Court of Hays County, Texas, on the 26th day of August, A. D. 1889, to try the title to fifty-two and two-fifths acres of land situated in Hays County, Texas.

On the 6th day of September, A. D. 1889, an interlocutory judgment by default was rendered against the defendant T. N. Franks.

On the 7th day of March, A. D. 1890, the defendants J. B. Ratliff and E. P. Haigler filed their original answer, consisting of a general demurrer, plea of not guilty, and a general denial.

The case was tried on the 25th day of March, A. D. 1892, before the court without a jury. Judgment was rendered in favor of the plaintiff, D. C. Burleson, against the defendants, J. B. Ratliff, E. P. Haigler, and T. N. Franks, for the recovery of the title to and possession of the land in controversy, and the defendants J. B. Ratliff and E. P. Haigler appealed.

*Opinion.*—The court below filed its conclusions of fact and law, as follows, which we adopt as the facts found by this court, and also agree with the trial court in its conclusions of law:

*Facts.*—"1. By agreement of the parties the sole issue in this cause is, whether the strip of land sued for by the plaintiff, Burleson, was part of the public domain, between the William Porter and George Herder surveys, or was embraced within the bounds of said surveys, at the time when the same was located by Burleson as vacant land.

"2. The Porter is the older one of the two surveys, and the field notes of the subsequent Herder survey do not call for the west line of the Porter survey.

"3. The true location of the southwest corner of the Porter survey and the southeast corner of the Herder survey determines whether

the two surveys are contiguous, or are separated by the strip of land in controversy.

"4. Being an open prairie country, neither natural nor artificial objects are called for in the field notes.

"5. Running the south line of the Porter survey from its known and established southeast corner west 2750 varas, and the south line of the Herder survey from its known and established southwest corner east 3226 varas, leaves the distance of 108 varas between the two surveys in question.

"6. One witness who made or assisted in the original survey of the Porter survey, and also the Herder survey, testifies, that it was the intention to run the south line of the Herder survey to a point in the west line of what is designated on the maps as the E. Burleson survey, and to make the east line of the Herder survey and the west line of the Porter survey contiguous or identical. He thinks that the lines of the Herder survey were actually run so as to carry out this intention, but by reason of the absence of any definite object he can not be positive that this was actually done, but his judgment is that it was done.

"7. The field notes of the Herder survey in the patent do not call for any point in the west line of any adjacent survey as contiguous.

" 8. If course and distances are followed, there remains a distance of 108 varas between the Porter and Herder surveys, and still each of these two surveys contain the stated quantity of land."

*Conclusions.*—"1. In the absence of any artificial or natural objects called for in the two surveys, course and distance control their lines.

" 2. Even if the surveyor who made the original survey of the Herder survey had in fact run 108 varas beyond the point in the south line of the Herder survey (3226 varas) in order to reach the west line of adjacent surveys, in the absence of any call for objects susceptible of identification, or for any point in the west line of any of the adjacent surveys, the course and distance in the Herder field notes control the length of the south line of the Herder survey.

"3. Evidence tending to show long recognition of certain lines by owners of land on said surveys is ignored, because such recognition, or even agreements between owners of adjacent lands, such as would estop them from asserting rights adverse to such agreement, can not in any way affect public domain, or appropriate any portion of it.

"4. The land described in plaintiff's petition was public domain, and the plaintiff is entitled to the same by reason of his location."

The judgment is affirmed.

*Affirmed.*

Delivered April 4, 1894.

ON MOTION FOR REHEARING.

FISHER, CHIEF JUSTICE.—In the former disposition of this case we considered the statement of facts, and now believe, as we did then, that the findings of fact are warranted by the evidence.

The facts show that the land in controversy lies between the Porter survey and the Herder survey, and it is contended by appellants that no vacancy existed between these surveys at the time appellee applied to purchase it from the State. The Porter was surveyed May 24, 1838, and the Herder was surveyed many years afterwards. The latter survey does not call for the Porter. Where the appellant claims these lines should intersect it is a prairie country. No object is found on the ground identifying the lines between these two surveys, nor is there any common call for the same objects or corners set out in the field notes of these surveys on the dividing lines between the two.

There is evidence showing that the surveyor, in locating the Herder, intended to go to the line of the Porter, and that he thought it was there when he made the call in the Herder for course and distance.

With this construction of the facts, we agreed in our former disposition of this case with the trial court, for the following reasons:

1. The lines of each survey between the two should be constructed by running course and distance from other established corners of each survey. 26 Texas, 359, 436; 67 Texas, 286; 68 Texas, 201, 271.

This does not militate against the rule laid down in Maddox Bros. v. Fenner, 79 Texas, 279, for in that case the surveys were made to connect, because there was a call in one survey for the line of the other, and it was there held that this call would control course and distance. In this case there is no such call.

2. A survey must be tested and ascertained by the calls contained in its field notes, and the line of another survey not called for, although the surveyor in locating the land intended to go there, will not control a call actually made by the field notes, and about which there is no ambiguity. The actual calls of the field notes, if susceptible of ascertainment by any well-known process of discovery known to the art of surveying in proving boundaries, will not yield to an object that is not called for, although it may be ascertained. Anderson v. Stamps, 19 Texas, 464; Robertson v. Mosson, 26 Texas, 253; Schaeffer v. Berry, 62 Texas, 714; Reast v. Donald, 84 Texas, 649.

The motion for rehearing is overruled.

*Motion overruled.*

Delivered June 13, 1894.